Charles and Victoria Tingler
963 Coleman Street
Placerville, CA 95667
530.903.2280

May 24, 2011

Certified Mail: 70090820000137563238-Clerk of the Court
                70073020000097471650-Daniel D. Hollingsworth

Clerk of the Court
UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
333 Las Vegas Boulevard
Las Vegas, Nevada 89101

Re: Petition of Interest in Forfeited Funds

Per the PRELIMINARY ORDER OF FORFEITURE, Notice of Criminal forfeiture was posted
at the government's internet forfeiture site, www.forfeiture.gov, regarding the case United States
v. SAMUEL DAVIS, 2:09-CR-078-JCM (RJJ). Please be advised that we, Charles and Victoria
Tingler of 963 Coleman Street, Placerville, CA 95667 wish to enter a Petition of Interest for the
forfeited funds based on the email copies and a copy of a Cashier's Check deposited into an
account at Wells Fargo Bank, account number 6783965202, known as Boulder Mountain
Funding Trust. We deposited these funds into this account as a private investment; this is clearly
stated in the email copies provided. We were unaware of Samuel Davis' other business
transactions although we did find it odd that the contract he had provided us was for a loan
arrangement rather than an investment. Please note the lender is shown as Yellowphin, Inc. a
corporation we are stockholders of and which Samuel Davis *did not* setup for us. After Samuel
Davis was arrested and the criminal indictment was filed Samuel Davis would not answer phone
calls, emails, or voicemail messages regarding these funds or let us know where they were.
Through other resources, we were told that the funds were seized by FBI agents and not placed
for investment as we had wished. The forfeiture notice does not mention assets of Boulder
Mountain Funding Trust, however the indictment does on pages 4, and 7- 31. On these pages
Boulder Mountain Funding Trust is mentioned numerous times. Due to these circumstances we
feel it correct to file this petition of Interest in Forfeited Funds for the full amount deposited,
$30,000.00.

Under penalty of perjury this is true and correct.

*Charles J. Tingler*
Charles J. Tingler

*Victoria Tingler*
Victoria M. Tingler

Enclosures



**EL DORADO SAVINGS BANK**
PLACERVILLE, CALIFORNIA

566734

90-708/7/3211

REMITTER

*** CHARLES A VICTORIA TINGLEN

*** BOULDER MOUNTAIN FUNDING TRUST ***

FEBRUARY 26, 2009

$*******30,000.00

THIRTY THOUSAND DOLLARS AND ZERO CENTS

RE:

**CASHIER'S CHECK**

VOID AFTER 90 DAYS

NOTICE
THE VOID DATE WILL BE ENFORCED IF THIS
INSTRUMENT HAS BEEN REPORTED LOST, STOLEN OR DESTROYED.

EL DORADO SAVINGS BANK

NOT NEGOTIABLE

⑈566734⑈ ⑆321170978⑆ 0131000308⑈

**From:** bldrmtn (bldrmtn@fiberpipe.net)
**To:** pollindicapine@yahoo.com;
**Date:** Sun, January 25, 2009 8:14:59 PM
**Cc:**
**Subject:** Re: plan

chuck, i would propose to you to hang on to as much as you can, even if you take the monthly gain and use it, around 4K per month, if you can do that. the more of this that you can invest the better in the long run, i urge you to think long term. of course, you do what you and your wife feel you must, just let me know what you want to do and we will go from there. obviously option 2 is best, if you put the funds into work for you. i will prepare the contracts, i will have them for your review tomorrow. let me know the name of the corp and 2 other names. i will handle all of this that you want me to. all my best. sam

> ----- Original Message -----
> **From:** Chuck Tingler
> **To:** bldrmtn
> **Sent:** Sunday, January 25, 2009 8:08 PM
> **Subject:** Re: plan
>
> hi sam
> first of all I would like to thank you for your time, I have some bills I need to pay, this will leave us around 55,000 to work with. I am a bit confused, am I investing the whole amount, or partial amount, and leaving the rest in the trust account. We have been mulling over names for the corp, by tommorrow we will have 3 names. Do we need to sign a contract for these transactions, we definately want to continue in this direction.We feel option 2 is best for us Chuck
>
> --- On **Sun, 1/25/09, bldrmtn *<bldrmtn@fiberpipe.net>* wrote:**
>
> > From: bldrmtn <bldrmtn@fiberpipe.net>
> > Subject: plan
> > To: pollindicapine@yahoo.com
> > Date: Sunday, January 25, 2009, 3:57 PM
> >
> > chuck, sam here, i wanted to give you an overview of what my thoughts are on the situation and what the steps are to get things done and protected. first of all, i have a bank account that is a trust account to hold funds. when you want and are ready, i can give you the bank info for wire instructions. secondly, i will order a wyoming corp and get that started, because that is where the funds will come back to. at your direction, i will arrange the funds to go to my guy in washington to begin the process of investment. those funds will go in the name of your corp and upon your approval i will move the funds from my account to his account. we will also prepare ucc-1's and contracts between companies to secure the transactions. the cost of the corp will be right at 3K. it takes about 2-3 weeks for it to be done, but as soon as you have the name for me, i can open bank accounts, etc. chuck, this is what i do pretty much for a living, when i do money things for clients, i charge one of 2 ways:  i charge 4% of the total of the funds handled coming to me, nothing going back, or, i charge a percentage of the profit realized going back to you. in other words, if you put 100K into my account in option 1, my fee is 4000. if you put 100K in option 2 and make 4% average per month, which is approximately 160K in one year, then my fee is 9% or 14,400.00. anyway, the ucc's will be filed between companies and contracts made as well. let me know what you would like to do and how you want to proceed. sam

**From:** Sam Davis (bldrmtn@fiberpipe.net)
**To:** pollindicapine@yahoo.com;
**Date:** Fri, February 6, 2009 8:49:50 AM
**Cc:**
**Subject:** Re: info

chuck,  if you go to wells fargo bank to make the deposit, it goes into the following account:
BOULDER MOUNTAIN FUNDING TRUST
ACCT # 6783965202.  thanks,  sam
On Feb 6, 2009, at 7:15 AM, Chuck Tingler wrote:

> hey sam, everything is good. we were going over other names for the corp, I have to get to work, I
> email later with names, have a great day chuck
>
> --- On **Thu, 2/5/09, Sam Davis <*bldrmtn@fiberpipe.net*>** wrote:
>
> > From: Sam Davis <bldrmtn@fiberpipe.net>
> > Subject: info
> > To: pollindicapine@yahoo.com
> > Date: Thursday, February 5, 2009, 4:43 PM
> >
> > chuck, just got into orlando for the seminar this weekend.  shortly i will hav
> > the info for you.  sorry for the delay, this computer problem is killing me,
> > better now.  sam

## LINE OF CREDIT AGREEMENT

THIS LINE OF CREDIT AGREEMENT (this "**Agreement**"), to be effective for all purposes as of February 23, 2009, (the "**Effective Date**"), is entered into by and between CRE8-EFZ, Incorporated, a Wyoming corporation ("**Borrower**"), and Yellowphin, Inc., ("**Lender**").

WHEREAS, Borrower has requested that Lender extend a line of credit to Borrower as described below, and Lender has agreed to provide such line of credit to Borrower on the terms and conditions contained herein.

NOW, THEREFORE, in consideration of the mutual covenants, representations, warranties, and agreements contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Borrower and Lender hereby agree as follows:

## ARTICLE I
## CREDIT TERMS

**Section 1.1**    **Line of Credit.**

(a)    Amount; Term. Subject to the terms and conditions of this Agreement, Lender hereby agrees to provide a line of credit and to make advances as requsted to Borrower on the during the Line of Credit Term (as defined below) for capital requirements and other agreed upon expenses, if any; provided that the outstanding amount of such advances shall not at any time exceed the aggregate principal amount of Ten Million Dollars ($96,000.00) (the "Line of Credit"). Subject to the terms and conditions of this Agreement, Borrower shall be entitled to receive advances under the Line of Credit beginning on the first day of the calendar month following the Effective Date and ending on July 1, 2013 (the "Line of Credit Term"). Notwithstanding the foregoing and on the condition that Borrower is in material compliance with all of terms and conditions provided herein, the Line of Credit Term will automatically extend for consecutive one-year terms (each a "Renewal Term") under the same terms and conditions set forth herein, until either party hereto gives the other party written notice at least thirty (30) days before the expiration of such Renewal Term that the Line of Credit Term shall terminate at the end of such Renewal Term.

(b)    Repayment; Interest; Penalties. All amounts outstanding under the Line of Credit shall be paid in full no later than July 1, 2013, unless the Line of Credit Term has been extended under the terms and conditions as described herein. In addition, all amounts drawn under the Line of Credit shall bear interest from the date such draw is paid by the Lender to the date such amount is fully repaid by Borrower at the Wells Fargo Bank prime rate, as adjusted on the first day of each calendar month, plus one quarter percent (.025%). Borrower shall pay interest payments to Lender at least annually, beginning on the first anniversary following Borrower's first draw under the Line of Credit (the "Initial Draw"). A penalty of one percent (1 %) per month shall accrue on all late interest payments. Notwithstanding anything contrary in this Agreement, there shall be no pre-payment penalty should the Borrower repay amounts drawn under the Line of Credit before the expiration of the Line of Credit Term. Amounts of principal

on the financial condition or operation of Borrower.

      (e)    <u>No Subordination</u>. There is no agreement, indenture, contract or instrument to which Borrower is a party or by which Borrower may be bound that requires the subordination in right of payment of any of Borrower's obligations subject to this Agreement to any other obligation of Borrower.

      (f)    <u>Permits; Licenses</u>. Borrower possesses all permits, consents, approvals, and licenses required and rights to all trademarks, trade names, patents, and fictitious names, if any, necessary to enable it to conduct the business in which it is engaged in compliance with applicable law.

      (g)    <u>Other Obligations</u>. As of the effective date of this Agreement, Borrower is not in default on any obligation for borrowed money, any purchase money obligation or any other material lease, commitment, contract instrument or obligation.

      (h)    <u>No Liens</u>.   Intentionally Deleted.

**ARTICLE III**
**CONDITIONS**

**Section 3.**    <u>**Conditions Precedent to Draws.**</u> The obligation of Lender to extend to Borrower any draws under the Line of Credit is subject to the fulfillment to Lender's satisfaction of all of the following conditions:

      (a)    <u>Approval of Lender Counsel.</u> All legal matters incidental to the extension of the Line of Credit by Lender shall be satisfactory to Lender's counsel.

      (b)    <u>Documentation</u>. Lender shall have received, in form and substance satisfactory to Lender, each of the following, duly executed:

            (i)    This Agreement and each other instrument or document required hereby;

            (ii)    A copy, certified as of the most recent date practicable by the Wyoming Secretary of State (the **"Secretary of State"**), of Borrower's articles of incorporation, together with a certificate of a Borrower's Secretary certifying as to (A) the effectiveness of the articles of incorporation and that such articles of incorporation have not been amended since the date of the aforesaid certification, (B) the incumbency and signatures of the officers of Borrower signing this Agreement and each other Loan Document to be delivered pursuant hereto, and (C) the effectiveness of the bylaws of Borrower, which bylaws shall be attached thereto;

            (iii) A certificate issued by the Secretary of State, as of the most recent date practicable, as to the good standing of Borrower;

            (iv) A certified copy of resolutions of Borrower authorizing the execution,

delivery, and performance of this Agreement and each other Loan Document;

(v) Intentionally Deleted;

(vi) Intentionally Deleted;

(vii) Intentionally Deleted; and

(viii) Such other documents as Lender may require as provided in any other Section of this Agreement.

(c)   <u>Financial Statement</u>. Intentionally Deleted.

(d)   <u>Compliance</u>. The representations and warranties contained herein and in each of the other Loan Documents shall be true on and as of the date of the signing of this Agreement and on the date of each draw, with the same effect as though such representations and warranties had been made on and as of each such date, and on each such date, no Event of Default, and no condition, event, or act which, with the giving of notice or the passage of time or both, would constitute such an Event of Default, shall have occurred and be continuing or shall exist.

## ARTICLE IV
## AFFIRMATIVE COVENANTS

Borrower covenants that, so long as Lender remains committed to extend credit to Borrower pursuant hereto, or any liabilities (whether direct or contingent, liquidated or unliquidated) of Borrower to Lender under any of the Loan Documents remain outstanding, and until payment in full of all obligations of Borrower subject hereto, Borrower shall, unless Lender otherwise consents in writing:

**Section 4.1**   **Punctual Payments**. Punctually pay all principal, interest, fees or other liabilities due under any of the Loan Documents at the times and place and in the manner specified therein, and immediately upon demand by Lender, pay the amount by which the outstanding principal balance of any credit subject hereto at any time exceeds any limitation on borrowings applicable thereto.

**Section 4.2**   **Accounting Records**. Maintain true, complete and accurate books and records in accordance with industry standards consistently applied, and permit any representative of Lender, at any reasonable time, to inspect, audit, and examine such books and records, to make copies of the same, and to inspect the properties of Borrower.

**Section 4.3**   **Compliance**. Preserve and maintain all licenses, permits, governmental approvals, rights, privileges, and franchises necessary for the conduct of Borrower's business; and comply with the provisions of all documents pursuant to which Borrower is organized and/or which govern Borrower's continued existence and with the requirements of all laws, rules, regulations and orders of any governmental authority applicable to Borrower and/or its business.

**Section 4.4    Insurance**. Intentionally Deleted.

**Section 4.5    Facilities**. Keep all properties useful or necessary to Borrower's business in good repair and condition, and from time to time make necessary repairs, renewals and replacements thereto so that such properties shall be fully and efficiently preserved and maintained.

**Section 4.6    Taxes and Other Liabilities**. Pay and discharge when due any and all applicable indebtedness, obligations, assessments, and taxes, both real or personal, including, without limitation, federal and state income taxes and state and local property taxes and assessments, except such (a) as Borrower may in good faith contest or as to which a bona fide dispute may arise, and (b) for which Borrower has made provision, to Lender's satisfaction, for eventual payment thereof in the event Borrower is obligated to make such payment.

**Section 4.7    Notice to Lender**. Promptly (but in no event more than five (5) days after the occurrence of each such event or matter) give written notice to Lender in reasonable detail of the following: (a) the occurrence of any Event of Default, or any condition, event, or act which with the giving of notice or the passage of time or both would constitute an Event of Default; (b) any change in the name or the organizational structure of Borrower; ( c) the occurrence and nature of any Reportable Event or Prohibited Transaction (each as defined in ERISA) or any funding deficiency with respect to any Plan (as defined in ERISA); (d) any termination or cancellation of any insurance policy which Borrower is required to maintain, or any uninsured or partially uninsured loss through liability or property damage, or through fire, theft, or any other cause affecting Borrower's property in excess of an aggregate of $20,000, and (e) promptly (but in no event more than five (5) days after the occurrence of each such event or matter) give notice in writing to Lender of any litigation pending or threatened against Borrower with a claim in excess of$20,000.

## ARTICLE V
## NEGATIVE COVENANTS

Borrower further covenants that, so long as Lender remains committed to extend credit to Borrower pursuant hereto, or any liabilities (whether direct or contingent, liquidated, or unliquidated) of Borrower to Lender under any of the Loan Documents remain outstanding, and until payment in full of all obligations of Borrower subject hereto, Borrower will not without Lender's prior written consent:

**Section 5.1    Use of Funds.** Use any of the proceeds of any credit extended hereunder except for the purposes stated in Article I hereof.

**Section 5.2    Other Indebtedness.** Create, incur, assume, or permit to exist any indebtedness or liabilities resulting from borrowings, loans, or advances, whether secured or unsecured, matured or unmatured, liquidated or unliquidated, joint or several.

**Section 5.3    Pledge of Assets.** Intentionally Deleted.

**Section 5.4.    Merger, Consolidation, Transfer of Assets.** Merge into or consolidate with any

other entity; make any substantial change in the nature of Borrower's core business as conducted (or intended to be conducted) as of the effective date of this Agreement; acquire all or substantially all of the assets of any other entity; nor sell, lease, transfer, or otherwise dispose of all or a substantial or material portion of Borrower's assets except in the ordinary course of its business.

**Section 5.5      Guaranties.** Guarantee or become liable in any way as surety, endorser (other than as endorser of negotiable instruments for deposit or collection in the ordinary course of business), accommodation endorser, or otherwise for, nor pledge or hypothecate any assets of Borrower as security for, any liabilities or obligations of any other person or entity, except any of the foregoing in favor of Lender.

**Section 5.6.      Loans, Advances and Investments.** Intentionally Deleted.

**ARTICLE VI**
**EVENTS OF DEFAULT**

**Section 6.1      Events of Default.** The occurrence of any of the following shall constitute an "**Event of Default**" under this Agreement:

(a)      Borrower shall fail to pay when due any principal, interest, fees, or other amounts payable under any of the Loan Documents;

(b)      Intentionally Deleted;

(c)      Any default in the performance of or compliance with any obligation, agreement, or other provision contained herein or in any other Loan Document (other than those referred to in subsections (a) and (b) above), and with respect to any such default which by its nature can be cured, such default is not cured within the time period, if any, allowed under the applicable Loan Document;

(d)      Any default in the payment or performance of any obligation, or any defined Event of Default, under the terms of any material contract or instrument pursuant to which Borrower has incurred any debt or other liability to any person or entity, including Lender, and with respect to any such default which by its nature can be cured, such default is not cured within the time period, if any, allowed under the applicable contract or instrument;

(e)      The filing of a notice of judgment lien against Borrower or the recording of any abstract of judgment against Borrower in any county in which Borrower has an interest in real property; or the service of a notice of levy and/or of a writ of attachment or execution, or other like process, against the assets of Borrower; or the entry of a judgment against Borrower, in each case which is not stayed or satisfied within thirty (30) days;

(f)      Borrower shall become insolvent, or shall suffer or consent to or apply for the appointment of a receiver, trustee, custodian, or liquidator of itself or any of its property, or shall generally fail to pay its debts as they become due, or shall make a general assignment for the

benefit of creditors; Borrower shall file a voluntary petition in bankruptcy, or seeking reorganization, in order to effect a plan or other arrangement with creditors or any other relief under the Bankruptcy Reform Act, Title 11 of the United States Code, as amended or recodified from time to time (**"Bankruptcy Code"**), or under any state or federal law granting relief to debtors, whether now or hereafter in effect; or any involuntary petition or proceeding pursuant to the Bankruptcy Code or any other applicable state or federal law relating to bankruptcy, reorganization, or other relief for debtors is filed or commenced against Borrower, or Borrower shall file an answer admitting the jurisdiction of the court and the material allegations of any involuntary petition; or Borrower shall be adjudicated a bankrupt, or an order for relief shall be entered against Borrower by any court of competent jurisdiction under the Bankruptcy Code or any other applicable state or federal law relating to bankruptcy, reorganization, or other relief for debtors;

(g)     There shall exist or occur any event or condition which Lender in good faith believes impairs the prospect of payment or performance by Borrower of its obligations under any of the Loan Documents;

(h)     The dissolution or liquidation of Borrower; or Borrower, or any of its directors or shareholders, shall take action seeking to effect the dissolution or liquidation of Borrower; or

(i)     The sale, transfer, hypothecation, assignment, or encumbrance, whether voluntary, involuntary, or by operation of law, without Lender's prior written consent, of all or any part of or interest in any Collateral required hereby.

**Section 6.2     Remedies.** Upon the occurrence of any Event of Default the following shall occur: (a) all indebtedness of Borrower under each of the Loan Documents, any term thereof to the contrary notwithstanding, shall at Lender's option and without notice become immediately due and payable without presentment, demand, protest, or notice of dishonor, all of which are hereby expressly waived by Borrower; (b) the obligation, if any, of Lender to extend any further credit under any of the Loan Documents shall immediately cease and terminate; and (c) Lender shall have all rights, powers, and remedies available under each of the Loan Documents, or accorded by law, including, without limitation, the right to resort to any or all security for any credit subject hereto and to exercise any or all of the rights of a beneficiary or secured party pursuant to applicable law. All rights, powers, and remedies of Lender may be exercised at any time by Lender and from time to time after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers, or remedies provided by law or equity.

## ARTICLE VII
## MISCELLANEOUS

Section 7.1     No Waiver. No delay, failure, or discontinuance of Lender in exercising any right, power, or remedy under any of the Loan Documents shall affect or operate as a waiver of such right, power, or remedy; nor shall any single or partial exercise of any such right, power or remedy preclude, waive, or otherwise affect any other or further exercise thereof or the exercise of any other right, power, or remedy. Any waiver, permit, consent, or approval of any kind by

Lender of any breach of or default under any of the Loan Documents must be in writing and shall be effective only to the extent set forth in such writing.

Section 7.2     Notices. All notices, requests, and demands which any party is required or may desire to give to any other party under any provision of this Agreement must be in writing delivered to each party at the following address:

> BORROWER:     2430 Lappin Lane, Council, Idaho   83612

> LENDER:      _____

or to such other address as any party may designate by written notice to all other parties. Each such notice, request, and demand shall be deemed given or made as follows: (a) if sent by hand delivery, upon delivery; (b) if sent by mail, upon the earlier of the date of receipt or three (3) days after deposit in the U.S. mail, first class and postage prepaid; and (c) if sent by facsimile transmission, upon receipt.

**Section 7.3     Successors, Assignment.** This Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, legal representatives, successors, and assigns of the parties; provided however, that Borrower may not assign or transfer its interest hereunder without Lender's prior written consent. Lender reserves the right to sell, assign, transfer, negotiate, or grant participations in all or any part of, or any interest in, Lender's rights and benefits under each of the Loan Documents. In connection therewith, Lender may disclose all documents and information that Lender now has or may hereafter acquire relating to any credit subject hereto, Borrower or its business, or any Collateral required hereunder.

**Section 7.4     Entire Agreement; Amendment.** This Agreement and the other Loan Documents constitute the entire agreement between Borrower and Lender with respect to each credit subject hereto and supersede all prior negotiations, communications, discussions, and correspondence concerning the subject matter hereof. This Agreement may be amended or modified only in writing signed by each party hereto.

**Section 7.5     No Third-Party Beneficiaries.** This Agreement is made and entered into for the sole protection and benefit of the parties hereto and their respective permitted successors and assigns, and no other person or entity shall be a third-party beneficiary of, or have any direct or indirect cause of action or claim in connection with, this Agreement or any other of the Loan Documents to which it is not a party.

**Section 7.6     Time.** Time is of the essence of each and every provision of this Agreement and each other of the Loan Documents.

**Section 7.7     Severability of Provisions.** If any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity without invalidating the remainder of such provision or any remaining provisions of this Agreement.

**Section 7.8**     **Counterparts.** This Agreement may be executed in any number of counterparts, each of which when executed and delivered shall be deemed to be an original, and all of which when taken together shall constitute one and the same agreement.

**Section 7.9**     **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Wyoming.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the day and year first written above.

**LENDER**

YELLOWPHIN, INC.

_____

Sam Davis, Trustee

**BORROWER**

CRE8-EFS, Incorporated

_____

Samuel L. Davis, President

# SEALED

U. S. Department of Justice
*United States Attorney*
*District of Nevada*
333 Las Vegas Blvd., S., Suite 5000
Las Vegas, NV 89101



1 GREGORY A BROWER
  United States Attorney
2 ERIC JOHNSON
  Assistant United States Attorney
3 333 Las Vegas Blvd. South, Suite 5000
  Las Vegas, Nevada 89101
4 Phone: (702) 388-6336 / Fax: (702) 388-5087

5

6 # UNITED STATES DISTRICT COURT

7 # DISTRICT OF NEVADA

8 -oOo-

9 UNITED STATES OF AMERICA,        )  CRIMINAL INDICTMENT
                                   )
10         PLAINTIFF,               )
                                   )  2:09-CR- _078_
11         vs.                      )
                                   )  **VIOLATIONS:**
12 SAMUEL DAVIS, and               )  18 U.S.C. § 1956(h) - Conspiracy
   SHAWN RICE,                     )  18 U.S.C. §1956(a)(3) - Money
13                                 )  Laundering
                                   )  18 U.S.C. §2 - Aiding and Abetting
14         DEFENDANTS.             )

15

16 **THE GRAND JURY CHARGES THAT:**

17                    **COUNT ONE**
          Conspiracy to Commit Money Laundering
18

19          1.    From on or about September 20, 2008, and continuing up to and

20 including on or about the date of this Indictment, in the District of Nevada and elsewhere,

21                    **SAMUEL DAVIS, and**
                      **SHAWN RICE,**
22

23 the defendants herein, and others unknown to the Grand Jury, did willfully and knowingly

24 combine, conspire, confederate and agree together and with each other to conduct and

25 attempt to conduct a financial transaction, as that term is defined in Title 18, United States

26 Code, Sections 1956(c)(3) and (4), involving property that a law enforcement officer

1   represented to be the proceeds of a specified unlawful activity and property used to conduct

2   and facilitate the specified unlawful activity, that is, proceeds from bank fraud, with the intent

3   to promote the carrying on of the specified unlawful activity and to conceal and disguise the

4   nature, location, source, ownership and control of property believed to be the proceeds of

5   specified unlawful activity, said specified unlawful activity being violations of Title 18, United

6   States Code, Section 1344.

7                          **Plan and Purpose of the Conspiracy**

8               2.      Beginning in or about March 2008 and continuing through the date of

9   this indictment, law enforcement officers, that is, special agents of the Federal Bureau of

10  Investigation, acting in an undercover capacity, met with defendant **SAMUEL DAVIS** in the

11  State of Nevada and represented to defendant **SAMUEL DAVIS** that they were involved with

12  individuals who were engaged in bank fraud  in violation of Title 18, United States Code,

13  Section 1344, specified unlawful activity as defined by Title 18, United States Code, Section

14  1956(c)(7)(A). The undercover agents explained they were involved in the theft and forgery

15  of stolen official checks from Wachovia Bank and showed defendant **SAMUEL DAVIS** what

16  the undercover agents represented as some of the official checks stolen from Wachovia

17  Bank.  The undercover agents expressed to defendant **SAMUEL DAVIS** that they desired

18  a mechanism to launder their proceeds from the bank fraud more quickly, that is, the

19  undercover agents sought to have defendant **SAMUEL DAVIS** engage in financial

20  transactions with the proceeds of bank fraud to promote the carrying on of the bank fraud

21  and to conceal and disguise the nature, location, source, ownership and control of the

22  proceeds the undercover agents represented to be the proceeds of bank fraud. Defendant

23  **SAMUEL DAVIS** told the undercover agents that he could launder the proceeds of the bank

24  fraud easily, and that he had engaged in money laundering in the past.  Defendant **SAMUEL**

25  **DAVIS** told the undercover agents that the money would originate in the undercover agents'

26

                                        2

1    financial account, then pass through one or more trusts and corporations financial accounts

2    controlled by defendant **SAMUEL DAVIS** before defendant **SAMUEL DAVIS** would return

3    the proceeds of the bank fraud to the undercover agents' financial account. Defendant

4    **SAMUEL DAVIS** said he would then further launder the proceeds of the bank fraud by

5    disguising the proceeds as loans. Defendant **SAMUEL DAVIS** explained that the money

6    would not be subject to tax liability, and that the loans would be concealed by having all

7    parties involved sign non-disclosure agreements.

8          3.     To accomplish the laundering of the proceeds, defendant **SAMUEL**

9    **DAVIS** agreed to and received from the undercover agents $10,000, which the undercover

10   agents represented as the proceeds of bank fraud, to cover the costs of creating any trusts

11   and corporations that defendant **SAMUEL DAVIS** would use to "wash" the proceeds. As

12   additional compensation for the laundering of the proceeds, defendant **SAMUEL DAVIS** also

13   agreed to receive an additional ten percent (10%) on the first $200,000 the undercover

14   agents wire transferred to him to be laundered. Subsequently, defendant **SAMUEL DAVIS**

15   arranged for the undercover agents to wire transfer money, which the undercover agents

16   represented to defendant **SAMUEL DAVIS** was the proceeds from bank fraud, to Wells

17   Fargo account number XXXXXX5202 in the name of Boulder Mountain Funding Trust.

18   Defendant **SAMUEL DAVIS** would then wire transfer the money back the to undercover

19   agents' financial account in the State of Nevada minus any fee for defendant **SAMUEL**

20   **DAVIS**'s services. From March 2008 through on or about September 9, 2008, undercover

21   agents wire transferred to **SAMUEL DAVIS** a total of approximately $585,000. Defendant

22   **SAMUEL DAVIS** had wire transferred back to agents approximately $540,000 to the

23   undercover agents financial account, and had kept $45,000 as payment for his money

24   laundering services.

25   . . .

26

3

4. Beginning in or about September 2008, the undercover agents told defendant **SAMUEL DAVIS** that the proceeds the undercover agents represented to be the proceeds of bank fraud were no longer available to be provided to defendant **SAMUEL DAVIS** for laundering through the use of wire transfers between financial institutions. The undercover agents told defendant **SAMUEL DAVIS** that the proceeds of the bank fraud were now available only in cash. To assist with the laundering of currency which the undercover agents represented to be from bank fraud, defendant **SAMUEL DAVIS** obtained the assistance of his associate, defendant **SHAWN RICE**. In or about September 2008, defendant **SAMUEL DAVIS** arranged for himself and defendant **SHAWN RICE** to meet an undercover agent in the State of Nevada to discussed how to launder the cash proceeds from bank fraud through financial transactions to promote the carrying on of the bank fraud and to conceal and disguise the nature, location, source, ownership and control of the cash. Beginning in or about September 2008, the undercover agent represented to defendant **SAMUEL DAVIS** that he was involved with individuals who were engaged in bank fraud, in violation of Title 18, United States Code, Section 1344, specified unlawful activity as defined by Title 18, United States Code, Section 1956(c)(7)(A). The undercover agent explained he was involved in the theft and forgery of stolen official checks from Wachovia Bank and showed defendant **SHAWN RICE** what the undercover agent represented as some of the official checks stolen from Wachovia Bank. The undercover agent subsequently advised defendant **SHAWN RICE** that his contact at Wachovia Bank who was stealing the blank official checks and signature stamps was getting transferred to the same department at Wells Fargo Bank, and would be in a position to steal these same items at Wells Fargo Bank.

5. Defendant **SHAWN RICE** proposed several options to launder the cash proceeds, including moving the currency into J.P. Morgan Chase Bank of Arizona through

4

1   his purported religious organizations, "The Order of Gershom" or "Simpe." Defendant
2   **SHAWN RICE** explained to the undercover agent that he could take the cash proceeds and
3   deposit them into his bank account as charitable donations because he claimed he was a
4   rabbi. Defendant **SHAWN RICE** further explained if he were stopped by police and
5   questioned about his possession of a large amount of cash, he would tell the police the
6   money was religious donations. Defendant **SHAWN RICE** stated that after he deposited the
7   money in his personal account, defendant **SHAWN RICE** could then transfer the money to
8   the undercover agent's financial account. Defendant **SHAWN RICE** agreed to launder the
9   cash proceeds the undercover agent represented to be the proceeds of bank fraud at a three
10   percent (3%) commission

11         6.     Beginning in or about October 2008, the undercover agent would meet
12   with defendant **SHAWN RICE** in the State of Nevada and provided defendant **SHAWN RICE**
13   with cash which the undercover agent would represent to be the proceeds of bank fraud.
14   Defendant **SHAWN RICE** would subsequently deposit the currency in his Simpe account at
15   J.P. Morgan Chase Bank, account number XXXXX4312, and then wire transfer the money
16   back to the undercover agent's financial account in the State of Nevada. Defendant **SHAWN**
17   **RICE** opened the Simpe account at J.P. Morgan Chase Bank under a false Social Security
18   Number not assigned to him. This allowed him to conceal his ownership and control of the
19   account and his involvement in the flow of currency through the account, in part by having
20   Currency Transaction Reports showing cash deposits or withdrawals in amounts over ten
21   thousand dollars ($10,000.00) filed under the false Social Security number rather than the
22   Social Security number assigned to Defendant **SHAWN RICE**.

23         7.     In or about November 2008, defendant **SAMUEL DAVIS** and defendant
24   **SHAWN RICE** met with an undercover agent in the State of Nevada and discussed the
25   changing of the method of laundering the proceeds the undercover agent represented as the
26

proceeds of bank fraud by wire transferring the currency after Defendant **SHAWN RICE** had deposited in to his Simpe account at J.P. Morgan Chase Bank to defendant **SAMUEL DAVIS**'s Boulder Mountain Funding Trust at Wells Fargo Bank and then having defendant **SAMUEL DAVIS** wire transfer the money to the undercover agent's financial account. Defendant **SAMUEL DAVIS** agreed to take a five percent (5%) commission of the money laundered as compensation for his services in laundering the bank fraud proceeds. Defendant **SHAWN RICE** agreed to take a three percent (3%) commission of the money laundered as compensation for his services in laundering the bank fraud proceeds. Subsequently, in the State of Nevada, the undercover agent or a confidential human source acting at the direction of the undercover agent provided defendant **SHAWN RICE** cash proceeds the undercover agent and the confidential human source represented to be the proceeds of bank fraud.  Defendant **SHAWN RICE** would take the cash proceeds and deposit them into his Simpe account at J.P. Morgan Chase bank, account number XXXXX4312 and wire transfer the money minus any fee to defendant **SAMUEL DAVIS**'s account in the name of Boulder Mountain Funding Trust at Wells Fargo Bank, account number XXXXXX5202, defendant **SAMUEL DAVIS** would then wire transfer the money minus any fee to the undercover agent's financial account in the State of Nevada.  From March 2008 through on or about the date of this indictment, in the State of Nevada, the undercover agents and confidential human source acting at the undercover agent's direction had provided defendant **SAMUEL DAVIS** and defendant **SHAWN RICE** a total of approximately $1,293,782 in cash proceeds.  Defendant **SAMUEL DAVIS** and defendant **SHAWN RICE** had wire transferred back to the undercover agents approximately $1,198,000 to the undercover agents' financial account in the State of Nevada.  Defendant **SAMUEL DAVIS** had taken a total of approximately $73,782 as fees for his services in laundering the

6

1  bank fraud proceeds. Defendant **SHAWN RICE** had taken a total of approximately $22,000

2  as fees for his services in laundering the bank fraud proceeds.

3      All in violation of Title 18, United States Code, Section 1956(h).

4                                    **COUNT TWO**
                            Money Laundering; Aiding and Abetting

5

6      8.      Paragraphs 2 through 7 of this Indictment are realleged and

7  incorporated by reference herein.

8      9.      On or about May 2, 2008, in the District of Nevada and elsewhere,

9                                  **SAMUEL DAVIS,**

10  defendant herein, did knowingly conduct and attempt to conduct a financial transaction, as

11  that term is defined in Title 18, United States Code, Sections 1956(c)(3) and (4), said

12  financial transaction being defendant **SAMUEL DAVIS** wire transferring $15,000 from Wells

13  Fargo Bank account number XXXXXX5202 in the name of Boulder Mountain Funding Trust

14  to a financial account in the United States controlled by a FBI agent acting in an undercover

15  capacity, involving property that a the FBI agent acting in his undercover capacity had

16  previously wire transferred to defendant **SAMUEL DAVIS** and represented to defendant

17  **SAMUEL DAVIS** to be the proceeds of a specified unlawful activity and property used to

18  conduct and facilitate the specified unlawful activity, that is, proceeds from bank fraud, with

19  the intent to promote the carrying on of the specified unlawful activity and to conceal and

20  disguise the nature, location, source, ownership and control of property believed to be the

21  proceeds of the specified unlawful activity, said specified unlawful activity being violations

22  of Title 18, United States Code, Section 1344.

23      All in violation of Title 18, United States Code, Sections 1956(a)(3)(A) and 2.

24  .   .   .

25  .   .   .

26

7

## COUNT THREE
### Money Laundering; Aiding and Abetting

10.     Paragraphs 2 through 7 of this Indictment are realleged and incorporated by reference herein.

11.     On or about May 8, 2008, in the District of Nevada and elsewhere,

**SAMUEL DAVIS,**

defendant herein, did knowingly conduct and attempt to conduct a financial transaction, as that term is defined in Title 18, United States Code, Sections 1956(c)(3) and (4), said financial transaction being defendant **SAMUEL DAVIS** wire transferring $18,000 from Wells Fargo Bank account number XXXXXX5202 in the name of Boulder Mountain Funding Trust to a financial account in the United States controlled by a FBI agent acting in an undercover capacity, involving property that a the FBI agent acting in his undercover capacity had previously wire transferred to defendant **SAMUEL DAVIS** and represented to defendant **SAMUEL DAVIS** to be the proceeds of a specified unlawful activity and property used to conduct and facilitate the specified unlawful activity, that is, proceeds from bank fraud, with the intent to promote the carrying on of the specified unlawful activity and to conceal and disguise the nature, location, source, ownership and control of property believed to be the proceeds of the specified unlawful activity, said specified unlawful activity being violations of Title 18, United States Code, Section 1344.

All in violation of Title 18, United States Code, Sections 1956(a)(3)(A) and 2.

## COUNT FOUR
### Money Laundering; Aiding and Abetting

12.     Paragraphs 2 through 7 of this Indictment are realleged and incorporated by reference herein.

.   .   .

8

13. On or about May 12, 2008, in the District of Nevada and elsewhere,

**SAMUEL DAVIS,**

defendant herein, did knowingly conduct and attempt to conduct a financial transaction, as that term is defined in Title 18, United States Code, Sections 1956(c)(3) and (4), said financial transaction being defendant **SAMUEL DAVIS** wire transferring $25,000 from Wells Fargo Bank account number XXXXXX5202 in the name of Boulder Mountain Funding Trust to a financial account in the United States controlled by a FBI agent acting in an undercover capacity, involving property that a the FBI agent acting in his undercover capacity had previously wire transferred to defendant **SAMUEL DAVIS** and represented to defendant **SAMUEL DAVIS** to be the proceeds of a specified unlawful activity and property used to conduct and facilitate the specified unlawful activity, that is, proceeds from bank fraud, with the intent to promote the carrying on of the specified unlawful activity and to conceal and disguise the nature, location, source, ownership and control of property believed to be the proceeds of the specified unlawful activity, said specified unlawful activity being violations of Title 18, United States Code, Section 1344.

All in violation of Title 18, United States Code, Sections 1956(a)(3)(A) and 2.

**COUNT FIVE**
Money Laundering; Aiding and Abetting

14. Paragraphs 2 through 7 of this Indictment are realleged and incorporated by reference herein.

15. On or about May 16, 2008, in the District of Nevada and elsewhere,

**SAMUEL DAVIS,**

defendant herein, did knowingly conduct and attempt to conduct a financial transaction, as that term is defined in Title 18, United States Code, Sections 1956(c)(3) and (4), said financial transaction being defendant **SAMUEL DAVIS** wire transferring $32,000 from Wells

9

1 | Fargo Bank account number XXXXXX5202 in the name of Boulder Mountain Funding Trust
2 | to a financial account in the United States controlled by a FBI agent acting in an undercover
3 | capacity, involving property that a the FBI agent acting in his undercover capacity had
4 | previously wire transferred to defendant **SAMUEL DAVIS** and represented to defendant
5 | **SAMUEL DAVIS** to be the proceeds of a specified unlawful activity and property used to
6 | conduct and facilitate the specified unlawful activity, that is, proceeds from bank fraud, with
7 | the intent to promote the carrying on of the specified unlawful activity and to conceal and
8 | disguise the nature, location, source, ownership and control of property believed to be the
9 | proceeds of the specified unlawful activity, said specified unlawful activity being violations
10 | of Title 18, United States Code, Section 1344.

11 | All in violation of Title 18, United States Code, Sections 1956(a)(3)(A) and 2.
12 | 56(a)(3)(A) and 2.

13 | .

## COUNT SIX
### Money Laundering; Aiding and Abetting

15 | 16. Paragraphs 2 through 7 of this Indictment are realleged and
16 | incorporated by reference herein.

17 | 17. On or about May 29, 2008, in the District of Nevada and elsewhere,

18 | **SAMUEL DAVIS,**

19 | defendant herein, did knowingly conduct and attempt to conduct a financial transaction, as
20 | that term is defined in Title 18, United States Code, Sections 1956(c)(3) and (4), said
21 | financial transaction being defendant **SAMUEL DAVIS** wire transferring $20,000 from Wells
22 | Fargo Bank account number XXXXXX5202 in the name of Boulder Mountain Funding Trust
23 | to a financial account in the United States controlled by a FBI agent acting in an undercover
24 | capacity, involving property that a the FBI agent acting in his undercover capacity had
25 | previously wire transferred to defendant **SAMUEL DAVIS** and represented to defendant

26 |

10

1   **SAMUEL DAVIS** to be the proceeds of a specified unlawful activity and property used to

2   conduct and facilitate the specified unlawful activity, that is, proceeds from bank fraud, with

3   the intent to promote the carrying on of the specified unlawful activity and to conceal and

4   disguise the nature, location, source, ownership and control of property believed to be the

5   proceeds of the specified unlawful activity, said specified unlawful activity being violations

6   of Title 18, United States Code, Section 1344.

7             All in violation of Title 18, United States Code, Sections 1956(a)(3)(A) and 2.

8                         **COUNT SEVEN**

                Money Laundering; Aiding and Abetting

9

10          18.    Paragraphs 2 through 7 of this Indictment are realleged and

11   incorporated by reference herein.

12          19.    On or about June 3, 2008, in the District of Nevada and elsewhere,

13                    **SAMUEL DAVIS,**

14   defendant herein, did knowingly conduct and attempt to conduct a financial transaction, as

15   that term is defined in Title 18, United States Code, Sections 1956(c)(3) and (4), said

16   financial transaction being defendant **SAMUEL DAVIS** wire transferring $20,000 from Wells

17   Fargo Bank account number XXXXXX5202 in the name of Boulder Mountain Funding Trust

18   to a financial account in the United States controlled by a FBI agent acting in an undercover

19   capacity, involving property that a the FBI agent acting in his undercover capacity had

20   previously wire transferred to defendant **SAMUEL DAVIS** and represented to defendant

21   **SAMUEL DAVIS** to be the proceeds of a specified unlawful activity and property used to

22   conduct and facilitate the specified unlawful activity, that is, proceeds from bank fraud, with

23   the intent to promote the carrying on of the specified unlawful activity and to conceal and

24   disguise the nature, location, source, ownership and control of property believed to be the

25

26

                                11

1  proceeds of the specified unlawful activity, said specified unlawful activity being violations
2  of Title 18, United States Code, Section 1344.

3          All in violation of Title 18, United States Code, Sections 1956(a)(3)(A) and 2..

4  **COUNT EIGHT**
   Money Laundering; Aiding and Abetting

5

6       21.    Paragraphs 2 through 7 of this Indictment are realleged and
7  incorporated by reference herein.

8       22.    On or about June 13, 2008, in the District of Nevada and elsewhere,

9                 **SAMUEL DAVIS,**

10  defendant herein, did knowingly conduct and attempt to conduct a financial transaction, as
11  that term is defined in Title 18, United States Code, Sections 1956(c)(3) and (4), said
12  financial transaction being defendant **SAMUEL DAVIS** wire transferring $5,000 from Wells
13  Fargo Bank account number XXXXXX5202 in the name of Boulder Mountain Funding Trust
14  to a financial account in the United States controlled by a FBI agent acting in an undercover
15  capacity, involving property that a the FBI agent acting in his undercover capacity had
16  previously wire transferred to defendant **SAMUEL DAVIS** and represented to defendant
17  **SAMUEL DAVIS** to be the proceeds of a specified unlawful activity and property used to
18  conduct and facilitate the specified unlawful activity, that is, proceeds from bank fraud, with
19  the intent to promote the carrying on of the specified unlawful activity and to conceal and
20  disguise the nature, location, source, ownership and control of property believed to be the
21  proceeds of the specified unlawful activity, said specified unlawful activity being violations
22  of Title 18, United States Code, Section 1344.

23          All in violation of Title 18, United States Code, Sections 1956(a)(3)(A) and 2.

24  .  .  .

25  .  .  .

26

**COUNT NINE**
Money Laundering; Aiding and Abetting

23.     Paragraphs 2 through 7 of this Indictment are realleged and incorporated by reference herein.

24.     On or about June 25, 2008, in the District of Nevada and elsewhere,

**SAMUEL DAVIS,**

defendant herein, did knowingly conduct and attempt to conduct a financial transaction, as that term is defined in Title 18, United States Code, Sections 1956(c)(3) and (4), said financial transaction being defendant **SAMUEL DAVIS** wire transferring $35,000 from Wells Fargo Bank account number XXXXXX5202 in the name of Boulder Mountain Funding Trust to a financial account in the United States controlled by a FBI agent acting in an undercover capacity, involving property that a the FBI agent acting in his undercover capacity had previously wire transferred to defendant **SAMUEL DAVIS** and represented to defendant **SAMUEL DAVIS** to be the proceeds of a specified unlawful activity and property used to conduct and facilitate the specified unlawful activity, that is, proceeds from bank fraud, with the intent to promote the carrying on of the specified unlawful activity and to conceal and disguise the nature, location, source, ownership and control of property believed to be the proceeds of the specified unlawful activity, said specified unlawful activity being violations of Title 18, United States Code, Section 1344.

All in violation of Title 18, United States Code, Sections 1956(a)(3)(A) and 2.

**COUNT TEN**
Money Laundering; Aiding and Abetting

25.     Paragraphs 2 through 7 of this Indictment are realleged and incorporated by reference herein.

13

26.     On or about June 30, 2008, in the District of Nevada and elsewhere,

**SAMUEL DAVIS,**

defendant herein, did knowingly conduct and attempt to conduct a financial transaction, as that term is defined in Title 18, United States Code, Sections 1956(c)(3) and (4), said financial transaction being defendant **SAMUEL DAVIS** wire transferring $45,000 from Wells Fargo Bank account number XXXXXX5202 in the name of Boulder Mountain Funding Trust to a financial account in the United States controlled by a FBI agent acting in an undercover capacity, involving property that a the FBI agent acting in his undercover capacity had previously wire transferred to defendant **SAMUEL DAVIS** and represented to defendant **SAMUEL DAVIS** to be the proceeds of a specified unlawful activity and property used to conduct and facilitate the specified unlawful activity, that is, proceeds from bank fraud, with the intent to promote the carrying on of the specified unlawful activity and to conceal and disguise the nature, location, source, ownership and control of property believed to be the proceeds of the specified unlawful activity, said specified unlawful activity being violations of Title 18, United States Code, Section 1344.

     All in violation of Title 18, United States Code, Sections 1956(a)(3)(A) and 2.

**COUNT ELEVEN**
Money Laundering; Aiding and Abetting

27.     Paragraphs 2 through 7 of this Indictment are realleged and incorporated by reference herein.

28.     On or about July 7, 2008, in the District of Nevada and elsewhere,

**SAMUEL DAVIS,**

defendant herein, did knowingly conduct and attempt to conduct a financial transaction, as that term is defined in Title 18, United States Code, Sections 1956(c)(3) and (4), said financial transaction being defendant **SAMUEL DAVIS** wire transferring $40,000 from Wells

14

1  Fargo Bank account number XXXXXX5202 in the name of Boulder Mountain Funding Trust

2  to a financial account in the United States controlled by a FBI agent acting in an undercover

3  capacity, involving property that a the FBI agent acting in his undercover capacity had

4  previously wire transferred to defendant **SAMUEL DAVIS** and represented to defendant

5  **SAMUEL DAVIS** to be the proceeds of a specified unlawful activity and property used to

6  conduct and facilitate the specified unlawful activity, that is, proceeds from bank fraud, with

7  the intent to promote the carrying on of the specified unlawful activity and to conceal and

8  disguise the nature, location, source, ownership and control of property believed to be the

9  proceeds of the specified unlawful activity, said specified unlawful activity being violations

10  of Title 18, United States Code, Section 1344.

11        All in violation of Title 18, United States Code, Sections 1956(a)(3)(A) and 2.

12  .  **COUNT TWELVE**

Money Laundering; Aiding and Abetting

13

14      29.  Paragraphs 2 through 7 of this Indictment are realleged and

15  incorporated by reference herein.

16      30.  On or about July 15, 2008, in the District of Nevada and elsewhere,

17               **SAMUEL DAVIS,**

18  defendant herein, did knowingly conduct and attempt to conduct a financial transaction, as

19  that term is defined in Title 18, United States Code, Sections 1956(c)(3) and (4), said

20  financial transaction being defendant **SAMUEL DAVIS** wire transferring $45,000 from Wells

21  Fargo Bank account number XXXXXX5202 in the name of Boulder Mountain Funding Trust

22  to a financial account in the United States controlled by a FBI agent acting in an undercover

23  capacity, involving property that a the FBI agent acting in his undercover capacity had

24  previously wire transferred to defendant **SAMUEL DAVIS** and represented to defendant

25  **SAMUEL DAVIS** to be the proceeds of a specified unlawful activity and property used to

26

15

1 conduct and facilitate the specified unlawful activity, that is, proceeds from bank fraud, with
2 the intent to promote the carrying on of the specified unlawful activity and to conceal and
3 disguise the nature, location, source, ownership and control of property believed to be the
4 proceeds of the specified unlawful activity, said specified unlawful activity being violations
5 of Title 18, United States Code, Section 1344.

6                 All in violation of Title 18, United States Code, Sections 1956(a)(3)(A) and 2.

7

8                             **COUNT THIRTEEN**
                     Money Laundering; Aiding and Abetting
9

10        31.    Paragraphs 2 through 7 of this Indictment are realleged and
11 incorporated by reference herein.

12        32.    On or about July 18, 2008, in the District of Nevada and elsewhere,

13                       **SAMUEL DAVIS,**

14 defendant herein, did knowingly conduct and attempt to conduct a financial transaction, as
15 that term is defined in Title 18, United States Code, Sections 1956(c)(3) and (4), said
16 financial transaction being defendant **SAMUEL DAVIS** wire transferring $60,000 from Wells
17 Fargo Bank account number XXXXXX5202 in the name of Boulder Mountain Funding Trust
18 to a financial account in the United States controlled by a FBI agent acting in an undercover
19 capacity, involving property that a the FBI agent acting in his undercover capacity had
20 previously wire transferred to defendant **SAMUEL DAVIS** and represented to defendant
21 **SAMUEL DAVIS** to be the proceeds of a specified unlawful activity and property used to
22 conduct and facilitate the specified unlawful activity, that is, proceeds from bank fraud, with
23 the intent to promote the carrying on of the specified unlawful activity and to conceal and
24 disguise the nature, location, source, ownership and control of property believed to be the
25
26

1   proceeds of the specified unlawful activity, said specified unlawful activity being violations
2   of Title 18, United States Code, Section 1344.

3           All in violation of Title 18, United States Code, Sections 1956(a)(3)(A) and 2.

4                               **COUNT FOURTEEN**
                          Money Laundering; Aiding and Abetting
5

6           33.     Paragraphs 2 through 7 of this Indictment are realleged and
7   incorporated by reference herein.

8           34.     On or about July 29, 2008, in the District of Nevada and elsewhere,

9                               **SAMUEL DAVIS,**

10  defendant herein, did knowingly conduct and attempt to conduct a financial transaction, as
11  that term is defined in Title 18, United States Code, Sections 1956(c)(3) and (4), said
12  financial transaction being defendant **SAMUEL DAVIS** wire transferring $65,000 from Wells
13  Fargo Bank account number XXXXXX5202 in the name of Boulder Mountain Funding Trust
14  to a financial account in the United States controlled by a FBI agent acting in an undercover
15  capacity, involving property that a the FBI agent acting in his undercover capacity had
16  previously wire transferred to defendant **SAMUEL DAVIS** and represented to defendant
17  **SAMUEL DAVIS** to be the proceeds of a specified unlawful activity and property used to
18  conduct and facilitate the specified unlawful activity, that is, proceeds from bank fraud, with
19  the intent to promote the carrying on of the specified unlawful activity and to conceal and
20  disguise the nature, location, source, ownership and control of property believed to be the
21  proceeds of the specified unlawful activity, said specified unlawful activity being violations
22  of Title 18, United States Code, Section 1344.

23          All in violation of Title 18, United States Code, Sections 1956(a)(3)(A) and 2.
24  .   .   .
25  .   .   .
26

                                    17

1
2

**COUNT FIFTEEN**
Money Laundering; Aiding and Abetting

3        35.        Paragraphs 2 through 7 of this Indictment are realleged and
4  incorporated by reference herein.

5        36.        On or about August 6, 2008, in the District of Nevada and elsewhere,

6                            **SAMUEL DAVIS,**

7  defendant herein, did knowingly conduct and attempt to conduct a financial transaction, as
8  that term is defined in Title 18, United States Code, Sections 1956(c)(3) and (4), said
9  financial transaction being defendant **SAMUEL DAVIS** wire transferring $35,000 from Wells
10  Fargo Bank account number XXXXXX5202 in the name of Boulder Mountain Funding Trust
11  to a financial account in the United States controlled by a FBI agent acting in an undercover
12  capacity, involving property that a the FBI agent acting in his undercover capacity had
13  previously wire transferred to defendant **SAMUEL DAVIS** and represented to defendant
14  **SAMUEL DAVIS** to be the proceeds of a specified unlawful activity and property used to
15  conduct and facilitate the specified unlawful activity, that is, proceeds from bank fraud, with
16  the intent to promote the carrying on of the specified unlawful activity and to conceal and
17  disguise the nature, location, source, ownership and control of property believed to be the
18  proceeds of the specified unlawful activity, said specified unlawful activity being violations
19  of Title 18, United States Code, Section 1344.

20        All in violation of Title 18, United States Code, Sections 1956(a)(3)(A) and 2.

21
22

**COUNT SIXTEEN**
Money Laundering; Aiding and Abetting

23        37.        Paragraphs 2 through 7 of this Indictment are realleged and
24  incorporated by reference herein.

25  . . .

26

18

38.     On or about August 20, 2008, in the District of Nevada and elsewhere,

**SAMUEL DAVIS,**

defendant herein, did knowingly conduct and attempt to conduct a financial transaction, as that term is defined in Title 18, United States Code, Sections 1956(c)(3) and (4), said financial transaction being defendant **SAMUEL DAVIS** wire transferring $30,000 from Wells Fargo Bank account number XXXXXX5202 in the name of Boulder Mountain Funding Trust to a financial account in the United States controlled by a FBI agent acting in an undercover capacity, involving property that a the FBI agent acting in his undercover capacity had previously wire transferred to defendant **SAMUEL DAVIS** and represented to defendant **SAMUEL DAVIS** to be the proceeds of a specified unlawful activity and property used to conduct and facilitate the specified unlawful activity, that is, proceeds from bank fraud, with the intent to promote the carrying on of the specified unlawful activity and to conceal and disguise the nature, location, source, ownership and control of property believed to be the proceeds of the specified unlawful activity, said specified unlawful activity being violations of Title 18, United States Code, Section 1344.

All in violation of Title 18, United States Code, Sections 1956(a)(3)(A) and 2.

## COUNT SEVENTEEN
Money Laundering; Aiding and Abetting

39.     Paragraphs 2 through 7 of this Indictment are realleged and incorporated by reference herein.

40.     On or about September 4, 2008, in the District of Nevada and elsewhere,

**SAMUEL DAVIS,**

defendant herein, did knowingly conduct and attempt to conduct a financial transaction, as that term is defined in Title 18, United States Code, Sections 1956(c)(3) and (4), said

19

financial transaction being defendant **SAMUEL DAVIS** wire transferring $25,000 from Wells Fargo Bank account number XXXXXX5202 in the name of Boulder Mountain Funding Trust to a financial account in the United States controlled by a FBI agent acting in an undercover capacity, involving property that a the FBI agent acting in his undercover capacity had previously wire transferred to defendant **SAMUEL DAVIS** and represented to defendant **SAMUEL DAVIS** to be the proceeds of a specified unlawful activity and property used to conduct and facilitate the specified unlawful activity, that is, proceeds from bank fraud, with the intent to promote the carrying on of the specified unlawful activity and to conceal and disguise the nature, location, source, ownership and control of property believed to be the proceeds of the specified unlawful activity, said specified unlawful activity being violations of Title 18, United States Code, Section 1344.

All in violation of Title 18, United States Code, Sections 1956(a)(3)(A) and 2.

### COUNT EIGHTEEN
Money Laundering; Aiding and Abetting

41.    Paragraphs 2 through 7 of this Indictment are realleged and incorporated by reference herein.

42.    On or about September 9 2008, in the District of Nevada and elsewhere,

### SAMUEL DAVIS,

defendant herein, did knowingly conduct and attempt to conduct a financial transaction, as that term is defined in Title 18, United States Code, Sections 1956(c)(3) and (4), said financial transaction being defendant **SAMUEL DAVIS** wire transferring $25,000 from Wells Fargo Bank account number XXXXXX5202 in the name of Boulder Mountain Funding Trust to a financial account in the United States controlled by a FBI agent acting in an undercover capacity, involving property that a the FBI agent acting in his undercover capacity had

20

1 | previously wire transferred to defendant **SAMUEL DAVIS** and represented to defendant

2 | **SAMUEL DAVIS** to be the proceeds of a specified unlawful activity and property used to

3 | conduct and facilitate the specified unlawful activity, that is, proceeds from bank fraud, with

4 | the intent to promote the carrying on of the specified unlawful activity and to conceal and

5 | disguise the nature, location, source, ownership and control of property believed to be the

6 | proceeds of the specified unlawful activity, said specified unlawful activity being violations

7 | of Title 18, United States Code, Section 1344.

8 | All in violation of Title 18, United States Code, Sections 1956(a)(3)(A) and 2.

9 |

10 | **COUNT NINETEEN**
Money Laundering; Aiding and Abetting

11 |

12 | 43.     Paragraphs 2 through 7 of this Indictment are realleged and

incorporated by reference herein.

13 |

14 | 44.     On or about October 15, 2008, in the District of Nevada and elsewhere,

15 | **SAMUEL DAVIS**, and
**SHAWN RICE**

16 | defendants herein, did knowingly conduct and attempt to conduct a financial transaction, as

17 | that term is defined in Title 18, United States Code, Sections 1956(c)(3) and (4), said

18 | financial transaction being defendant **SHAWN RICE** depositing a check for $10,000 from

19 | J.P. Morgan Chase Bank, account number XXXXX4312, in the name of Simpe, to a financial

20 | account controlled by a FBI agent acting in an undercover capacity, involving property that

21 | a the FBI agent acting in his undercover capacity had previously provided in currency to

22 | defendant **SHAWN RICE** in the State of Nevada and represented to defendants **SAMUEL**

23 | **DAVIS** and **SHAWN RICE** to be the proceeds of a specified unlawful activity and property

24 | used to conduct and facilitate the specified unlawful activity, that is, proceeds from bank

25 | fraud, with the intent to promote the carrying on of the specified unlawful activity and to

26 |

21

conceal and disguise the nature, location, source, ownership and control of property believed to be the proceeds of the specified unlawful activity, said specified unlawful activity being violations of Title 18, United States Code, Section 1344.

All in violation of Title 18, United States Code, Sections 1956(a)(3)(A) and 2.

### COUNT TWENTY
Money Laundering; Aiding and Abetting

45.     Paragraphs 2 through 7 of this Indictment are realleged and incorporated by reference herein.

46.     On or about October 27, 2008, in the District of Nevada and elsewhere,

**SAMUEL DAVIS,** and
**SHAWN RICE**

defendants herein, did knowingly conduct and attempt to conduct a financial transaction, as that term is defined in Title 18, United States Code, Sections 1956(c)(3) and (4), said financial transaction being defendant **SHAWN RICE** depositing a check for $27,000 from J.P. Morgan Chase Bank, account number XXXXX4312, in the name of Simpe, to a financial account controlled by a FBI agent acting in an undercover capacity, involving property that a the FBI agent acting in his undercover capacity had previously provided in currency to defendant **SHAWN RICE** in the State of Nevada and represented to defendants **SAMUEL DAVIS** and **SHAWN RICE** to be the proceeds of a specified unlawful activity and property used to conduct and facilitate the specified unlawful activity, that is, proceeds from bank fraud, with the intent to promote the carrying on of the specified unlawful activity and to conceal and disguise the nature, location, source, ownership and control of property believed to be the proceeds of the specified unlawful activity, said specified unlawful activity being violations of Title 18, United States Code, Section 1344.

All in violation of Title 18, United States Code, Sections 1956(a)(3)(A) and 2.

.   .   .

22

## COUNT TWENTY-ONE
Money Laundering; Aiding and Abetting

47.     Paragraphs 2 through 7 of this Indictment are realleged and incorporated by reference herein.

48.     On or about October 31, 2008, in the District of Nevada and elsewhere,

### SAMUEL DAVIS, and
### SHAWN RICE

defendants herein, did knowingly conduct and attempt to conduct a financial transaction, as that term is defined in Title 18, United States Code, Sections 1956(c)(3) and (4), said financial transaction being defendant **SHAWN RICE** depositing a check for $60,000 from J.P. Morgan Chase Bank, account number XXXXX4312, in the name of Simpe, to a financial account controlled by a FBI agent acting in an undercover capacity, involving property that a the FBI agent acting in his undercover capacity had previously provided in currency to defendant **SHAWN RICE** in the State of Nevada and represented to defendants **SAMUEL DAVIS** and **SHAWN RICE** to be the proceeds of a specified unlawful activity and property used to conduct and facilitate the specified unlawful activity, that is, proceeds from bank fraud, with the intent to promote the carrying on of the specified unlawful activity and to conceal and disguise the nature, location, source, ownership and control of property believed to be the proceeds of the specified unlawful activity, said specified unlawful activity being violations of Title 18, United States Code, Section 1344.

All in violation of Title 18, United States Code, Sections 1956(a)(3)(A) and 2.

## COUNT TWENTY-TWO
Money Laundering; Aiding and Abetting

49.     Paragraphs 2 through 7 of this Indictment are realleged and incorporated by reference herein.

. . .

23

50. On or about November 7, 2008, in the District of Nevada and elsewhere,

**SAMUEL DAVIS, and
SHAWN RICE,**

defendants herein, did knowingly conduct and attempt to conduct a financial transaction, as that term is defined in Title 18, United States Code, Sections 1956(c)(3) and (4), said financial transaction being defendant **SAMUEL DAVIS** depositing a check for $100,000 from Wells Fargo Bank account number XXXXXX5202 in the name of Boulder Mountain Funding Trust to a financial account controlled by a FBI agent acting in an undercover capacity, involving property that a the FBI agent acting in his undercover capacity had previously provided in currency to defendant **SHAWN RICE** in the State of Nevada and represented to defendants **SAMUEL DAVIS** and **SHAWN RICE** to be the proceeds of a specified unlawful activity and property used to conduct and facilitate the specified unlawful activity, that is, proceeds from bank fraud, with the intent to promote the carrying on of the specified unlawful activity and to conceal and disguise the nature, location, source, ownership and control of property believed to be the proceeds of the specified unlawful activity, said specified unlawful activity being violations of Title 18, United States Code, Section 1344.

All in violation of Title 18, United States Code, Sections 1956(a)(3)(A) and 2.

**COUNT TWENTY-THREE**
Money Laundering; Aiding and Abetting

51. Paragraphs 2 through 7 of this Indictment are realleged and incorporated by reference herein.

52. On or about November 19, 2008, in the District of Nevada and elsewhere,

**SAMUEL DAVIS, and
SHAWN RICE,**

24

defendants herein, did knowingly conduct and attempt to conduct a financial transaction, as that term is defined in Title 18, United States Code, Sections 1956(c)(3) and (4), said financial transaction being defendant **SAMUEL DAVIS** wire transferring $50,000 from Wells Fargo Bank account number XXXXXX5202 in the name of Boulder Mountain Funding Trust to a financial account controlled by a FBI agent acting in an undercover capacity, involving property that a the FBI agent acting in his undercover capacity had previously provided in currency to defendant **SHAWN RICE** in the State of Nevada and represented to defendants **SAMUEL DAVIS** and **SHAWN RICE** to be the proceeds of a specified unlawful activity and property used to conduct and facilitate the specified unlawful activity, that is, proceeds from bank fraud, with the intent to promote the carrying on of the specified unlawful activity and to conceal and disguise the nature, location, source, ownership and control of property believed to be the proceeds of the specified unlawful activity, said specified unlawful activity being violations of Title 18, United States Code, Section 1344.

All in violation of Title 18, United States Code, Sections 1956(a)(3)(A) and 2.

## COUNT TWENTY-FOUR
Money Laundering; Aiding and Abetting

53.  Paragraphs 2 through 7 of this Indictment are realleged and incorporated by reference herein.

54.  On or about November 21, 2008, in the District of Nevada and elsewhere,

**SAMUEL DAVIS,** and
**SHAWN RICE,**

defendants herein, did knowingly conduct and attempt to conduct a financial transaction, as that term is defined in Title 18, United States Code, Sections 1956(c)(3) and (4), said financial transaction being defendant **SAMUEL DAVIS** wire transferring $45,000 from Wells Fargo Bank account number XXXXXX5202 in the name of Boulder Mountain Funding Trust

25

1    to a financial account controlled by a FBI agent acting in an undercover capacity, involving

2    property that a the FBI agent acting in his undercover capacity had previously provided in

3    currency to defendant **SHAWN RICE** in the State of Nevada and represented to defendants

4    **SAMUEL DAVIS** and **SHAWN RICE** to be the proceeds of a specified unlawful activity and

5    property used to conduct and facilitate the specified unlawful activity, that is, proceeds from

6    bank fraud, with the intent to promote the carrying on of the specified unlawful activity and

7    to conceal and disguise the nature, location, source, ownership and control of property

8    believed to be the proceeds of the specified unlawful activity, said specified unlawful activity

9    being violations of Title 18, United States Code, Section 1344.

10          All in violation of Title 18, United States Code, Sections 1956(a)(3)(A) and 2.

11                            **<u>COUNT TWENTY-FIVE</u>**
                      Money Laundering; Aiding and Abetting

12

13         54.     Paragraphs 2 through 7 of this Indictment are realleged and

14    incorporated by reference herein.

15         55.     On or about December 1, 2008, in the District of Nevada and elsewhere,

16                         **SAMUEL DAVIS,** and
                        **SHAWN RICE,**

17

18    defendants herein, did knowingly conduct and attempt to conduct a financial transaction, as

19    that term is defined in Title 18, United States Code, Sections 1956(c)(3) and (4), said

20    financial transaction being defendant **SAMUEL DAVIS** wire transferring $60,000 from Wells

21    Fargo Bank account number XXXXXX5202 in the name of Boulder Mountain Funding Trust

22    to a financial account controlled by a FBI agent acting in an undercover capacity, involving

23    property that a the FBI agent acting in his undercover capacity had previously provided in

24    currency to defendant **SHAWN RICE** in the State of Nevada and represented to defendants

25    **SAMUEL DAVIS** and **SHAWN RICE** to be the proceeds of a specified unlawful activity and

26    property used to conduct and facilitate the specified unlawful activity, that is, proceeds from

1 | bank fraud, with the intent to promote the carrying on of the specified unlawful activity and
2 | to conceal and disguise the nature, location, source, ownership and control of property
3 | believed to be the proceeds of the specified unlawful activity, said specified unlawful activity
4 | being violations of Title 18, United States Code, Section 1344.

5 |         All in violation of Title 18, United States Code, Sections 1956(a)(3)(A) and 2.

6 |

7 | **COUNT TWENTY-SIX**
Money Laundering; Aiding and Abetting

8 |

9 |         56.    Paragraphs 2 through 7 of this Indictment are realleged and
incorporated by reference herein.

10 |

11 |         57.    On or about December 2, 2008, in the District of Nevada and elsewhere,

12 | **SAMUEL DAVIS, and**
**SHAWN RICE,**

13 | defendants herein, did knowingly conduct and attempt to conduct a financial transaction, as
14 | that term is defined in Title 18, United States Code, Sections 1956(c)(3) and (4), said
15 | financial transaction being defendant **SAMUEL DAVIS** wire transferring $32,000 from Wells
16 | Fargo Bank account number XXXXXX5202 in the name of Boulder Mountain Funding Trust
17 | to a financial account controlled by a FBI agent acting in an undercover capacity, involving
18 | property that a the FBI agent acting in his undercover capacity had previously provided in
19 | currency to defendant **SHAWN RICE** in the State of Nevada and represented to defendants
20 | **SAMUEL DAVIS** and **SHAWN RICE** to be the proceeds of a specified unlawful activity and
21 | property used to conduct and facilitate the specified unlawful activity, that is, proceeds from
22 | bank fraud, with the intent to promote the carrying on of the specified unlawful activity and
23 | to conceal and disguise the nature, location, source, ownership and control of property
24 | believed to be the proceeds of the specified unlawful activity, said specified unlawful activity
25 | being violations of Title 18, United States Code, Section 1344.

26 |

27

All in violation of Title 18, United States Code, Sections 1956(a)(3)(A) and 2.

## COUNT TWENTY-SEVEN
Money Laundering; Aiding and Abetting

58. Paragraphs 2 through 7 of this Indictment are realleged and incorporated by reference herein.

59. On or about December 9, 2008, in the District of Nevada and elsewhere,

**SAMUEL DAVIS, and
SHAWN RICE,**

defendants herein, did knowingly conduct and attempt to conduct a financial transaction, as that term is defined in Title 18, United States Code, Sections 1956(c)(3) and (4), said financial transaction being defendant **SAMUEL DAVIS** wire transferring $70,000 from Wells Fargo Bank account number XXXXXX5202 in the name of Boulder Mountain Funding Trust to a financial account controlled by a FBI agent acting in an undercover capacity, involving property that a the FBI agent acting in his undercover capacity had previously provided in currency to defendant **SHAWN RICE** in the State of Nevada and represented to defendants **SAMUEL DAVIS** and **SHAWN RICE** to be the proceeds of a specified unlawful activity and property used to conduct and facilitate the specified unlawful activity, that is, proceeds from bank fraud, with the intent to promote the carrying on of the specified unlawful activity and to conceal and disguise the nature, location, source, ownership and control of property believed to be the proceeds of the specified unlawful activity, said specified unlawful activity being violations of Title 18, United States Code, Section 1344.

All in violation of Title 18, United States Code, Sections 1956(a)(3)(A) and 2.

## COUNT TWENTY-EIGHT
Money Laundering; Aiding and Abetting

60. Paragraphs 2 through 7 of this Indictment are realleged and incorporated by reference herein.

28

61. On or about December 10, 2008, in the District of Nevada and elsewhere,

**SAMUEL DAVIS,** and
**SHAWN RICE,**

defendants herein, did knowingly conduct and attempt to conduct a financial transaction, as that term is defined in Title 18, United States Code, Sections 1956(c)(3) and (4), said financial transaction being defendant **SAMUEL DAVIS** wire transferring $22,000 from Wells Fargo Bank account number XXXXXX5202 in the name of Boulder Mountain Funding Trust to a financial account controlled by a FBI agent acting in an undercover capacity, involving property that a the FBI agent acting in his undercover capacity had previously provided in currency to defendant **SHAWN RICE** in the State of Nevada and represented to defendants **SAMUEL DAVIS** and **SHAWN RICE** to be the proceeds of a specified unlawful activity and property used to conduct and facilitate the specified unlawful activity, that is, proceeds from bank fraud, with the intent to promote the carrying on of the specified unlawful activity and to conceal and disguise the nature, location, source, ownership and control of property believed to be the proceeds of the specified unlawful activity, said specified unlawful activity being violations of Title 18, United States Code, Section 1344.

All in violation of Title 18, United States Code, Sections 1956(a)(3)(A) and 2.

**COUNT TWENTY-NINE**
Money Laundering; Aiding and Abetting

62. Paragraphs 2 through 7 of this Indictment are realleged and incorporated by reference herein.

63. On or about December 24, 2008, in the District of Nevada and elsewhere,

**SAMUEL DAVIS,** and
**SHAWN RICE,**

29

1   defendants herein, did knowingly conduct and attempt to conduct a financial transaction, as

2   that term is defined in Title 18, United States Code, Sections 1956(c)(3) and (4), said

3   financial transaction being defendant **SAMUEL DAVIS** wire transferring $62,000 from Wells

4   Fargo Bank account number XXXXXX5202 in the name of Boulder Mountain Funding Trust

5   to a financial account controlled by a FBI agent acting in an undercover capacity, involving

6   property that a the FBI agent acting in his undercover capacity had previously provided in

7   currency to defendant **SHAWN RICE** in the State of Nevada and represented to defendants

8   **SAMUEL DAVIS** and **SHAWN RICE** to be the proceeds of a specified unlawful activity and

9   property used to conduct and facilitate the specified unlawful activity, that is, proceeds from

10   bank fraud, with the intent to promote the carrying on of the specified unlawful activity and

11   to conceal and disguise the nature, location, source, ownership and control of property

12   believed to be the proceeds of the specified unlawful activity, said specified unlawful activity

13   being violations of Title 18, United States Code, Section 1344.

14         All in violation of Title 18, United States Code, Sections 1956(a)(3)(A) and 2.

15         **COUNT THIRTY**
          Money Laundering; Aiding and Abetting

16

17       62.   Paragraphs 2 through 7 of this Indictment are realleged and

18   incorporated by reference herein.

19       63.   On or about December 26, 2008, in the District of Nevada and

20   elsewhere,

21             **SAMUEL DAVIS,** and
             **SHAWN RICE,**

22

23   defendants herein, did knowingly conduct and attempt to conduct a financial transaction, as

24   that term is defined in Title 18, United States Code, Sections 1956(c)(3) and (4), said

25   financial transaction being defendant **SAMUEL DAVIS** wire transferring $30,000 from Wells

26

1 Fargo Bank account number XXXXXX5202 in the name of Boulder Mountain Funding Trust
2 to a financial account controlled by a FBI agent acting in an undercover capacity, involving
3 property that a the FBI agent acting in his undercover capacity had previously provided in
4 currency to defendant **SHAWN RICE** in the State of Nevada and represented to defendants
5 **SAMUEL DAVIS** and **SHAWN RICE** to be the proceeds of a specified unlawful activity and
6 property used to conduct and facilitate the specified unlawful activity, that is, proceeds from
7 bank fraud, with the intent to promote the carrying on of the specified unlawful activity and
8 to conceal and disguise the nature, location, source, ownership and control of property
9 believed to be the proceeds of the specified unlawful activity, said specified unlawful activity
10 being violations of Title 18, United States Code, Section 1344.

11 All in violation of Title 18, United States Code, Sections 1956(a)(3)(A) and 2.

12

13 **COUNT THIRTY-0NE**
Money Laundering; Aiding and Abetting

14

15 62. Paragraphs 2 through 7 of this Indictment are realleged and
16 incorporated by reference herein.

17 63. On or about January 5, 2009, in the District of Nevada and elsewhere,

18 **SAMUEL DAVIS,** and
**SHAWN RICE,**

19

20 defendants herein, did knowingly conduct and attempt to conduct a financial transaction, as
21 that term is defined in Title 18, United States Code, Sections 1956(c)(3) and (4), said
22 financial transaction being defendant **SAMUEL DAVIS** wire transferring $92,000 from Wells
23 Fargo Bank account number XXXXXX5202 in the name of Boulder Mountain Funding Trust
24 to a financial account controlled by a FBI agent acting in an undercover capacity, involving
25 property that a the FBI agent acting in his undercover capacity had previously provided in

26

31

currency to defendant **SHAWN RICE** in the State of Nevada and represented to defendants **SAMUEL DAVIS** and **SHAWN RICE** to be the proceeds of a specified unlawful activity and property used to conduct and facilitate the specified unlawful activity, that is, proceeds from bank fraud, with the intent to promote the carrying on of the specified unlawful activity and to conceal and disguise the nature, location, source, ownership and control of property believed to be the proceeds of the specified unlawful activity, said specified unlawful activity being violations of Title 18, United States Code, Section 1344.

All in violation of Title 18, United States Code, Sections 1956(a)(3)(A) and 2.

32

## FORFEITURE ALLEGATION ONE
(Conspiracy to Commit Money Laundering)

64.    The allegation of Counts One through Thirty-One of this Indictment are hereby realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to the provision of Title 18, United States Code, Section 981(a)(1)(A), and Title 28, United States Code, Section 2461(c).

65.    Upon a conviction of the felony offense charged in Counts One through Thirty-One of this Indictment, defendants

**SAMUEL DAVIS,** and
**SHAWN RICE,**

defendants herein, shall forfeit to the United States of America, any property involved in transactions or attempted transactions in violations of Title 18, United States Code, Section 1956 up to $1,290,000.00 In United States Currency.

66.    If any property being subject to forfeiture pursuant to Title 21, United States Code, Section 853, as a result of any act or omission of the defendants –

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been place beyond the jurisdiction of the court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property that cannot be divided without difficulty;

it is the intent of the United States of America to seek forfeiture of any properties of the defendant up to $1,290,000.00 in United States Currency.

All pursuant to Title 18, United States Code, Section 981(a)(1)(A); Title 28, United States Code, Section 2461(c); Title 18, United States Code, Section 1956; and Title 21, United States Code, Section 853(p).

33

**FORFEITURE ALLEGATION TWO**
(Conspiracy to Commit Money Laundering)

67.     The allegation of Counts One through Thirty-One of this Indictment are hereby realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to the provision of Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

68.     Upon a conviction of the felony offense charged in Counts One through Thirty-One of this Indictment, defendants

**SAMUEL DAVIS, and**
**SHAWN RICE,**

defendants herein, shall forfeit to the United States of America, any property which constitutes or is derived from proceeds traceable to violations of a conspiracy to commit violations of Title 18, United States Code, Section 1344, a "specified unlawful activity" as defined in Title 18, United States Code, Section 1956(c)(7) and Title 18, United States Code, Section 1961 up to $1,290,000.00 In United States Currency.

69.     If any property being subject to forfeiture pursuant to Title 21, United States Code, Section 853, as a result of any act or omission of the defendants –

a.     cannot be located upon the exercise of due diligence;

b.     has been transferred or sold to, or deposited with, a third party;

c.     has been place beyond the jurisdiction of the court;

d.     has been substantially diminished in value; or

e.     has been commingled with other property that cannot be divided without difficulty;

it is the intent of the United States of America to seek forfeiture of any properties of the defendant up to $1,290,000.00 in United States Currency.

34

All pursuant to Title 18, United States Code, Section 981(a)(1)(C); Title 28, United States Code, Section 2461(c); Title 18, United States Code, Section 1344, a "specified unlawful activity" as defined in Title 18, United States Code, Section 1956(c)(7) and Title 18, United States Code, Section 1961; and Title 21, United States Code, Section 853(p).

### FORFEITURE ALLEGATION THREE
(Conspiracy to Commit Money Laundering)

67.  The allegation of Counts One through Thirty-One of this Indictment are hereby realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to the provision of Title 18, United States Code, Section 982(a)(1).

68.  Upon a conviction of the felony offense charged in Counts One through Thirty-One of this Indictment, defendants

**SAMUEL DAVIS, and
SHAWN RICE,**

defendants herein, shall forfeit to the United States of America, any property involved in or traceable to violations of  Title 18, United States Code, Section 1956 up to $1,290,000.00 In United States Currency.

69.  If any property being subject to forfeiture pursuant to Title 18, United States Code, Section 982(b)(2), as a result of any act or omission of the defendants --

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third party;

c.  has been place beyond the jurisdiction of the court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property that cannot be divided without difficulty;

35

1 | it is the intent of the United States of America to seek forfeiture of any properties of the
2 | defendant up to $1,290,000.00 in United States Currency.

3 |      All pursuant to Title 18, United States Code, Section 1956 and Title 18, United
4 | States Code, Section 982(b)(2).

5 |      **DATED**: this _3_ day of March 2009.

6 |      **TRUE BILL:**

7 |

8 |         /s/
        FOREPERSON OF THE GRAND JURY

9 |

10 | GREGORY A. BROWER
United States Attorney

11 |

12 |

13 | ERIC JOHNSON
Assistant United States Attorney

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

36